IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11 C 1520 |
| ) | |
| PHILIP WASHINGTON, DANIEL ) | |
| ANDRADE, STANLEY LAWRENCE, ) | |
| SHARI LAWRENCE, and ) | |
| MICHAEL MAGLIANO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

James Miller has sued Chicago police officers Philip Washington, Daniel Andrade, and Michael Magliano (Magliano is no longer with the Chicago police department), as well as Stanley Lawrence and Shari Lawrence. Miller's complaint includes five claims: a claim against the officers under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights; state law claims against Stanley Lawrence for false imprisonment and malicious prosecution; and state law claims against Stanley Lawrence and Shari Lawrence for intentional infliction of emotional distress and wrongful eviction. Each of the defendants has moved for summary judgment. The Court will refer to the Lawrences by their first names to make this decision easier to follow.

**Factual background**

The following facts are derived largely from Miller's fifth amended complaint. The

Court will discuss the evidence as necessary in the "discussion" section of this decision.

Miller alleges that starting in 1993, he resided at the home of Frances Lawrence and provided her with day to day care in later years when she was seriously ill. Miller says that they developed a strong friendship, and Frances placed her trust in him. She granted him a power of attorney and made provisions in her will that Miller would inherit the home when she died.

The events at issue in this case took place in March and April 2009. Miller was fifty-nine years old at the time. Frances was in an extended care facility following treatment in a hospital for cancer. Miller contends that Stanley and Shari, Frances's children, took advantage of her and obtained from her a revocation of the power of attorney that Frances had granted to Miller, as well as a new power of attorney naming Shari with Stanley as her successor and a quitclaim deed conveying her home to Shari and Stanley. Miller questions the authenticity of Frances' purported signature on these documents (the signature is an "X").

On April 15, 2009, Miller alleges, Shari and Stanley attempted to serve him with a "five day notice" identifying Miller as a tenant and directing him to leave the premises. On April 21, 2009, Shari and Stanley filed a *pro se* lawsuit in state court seeking to evict Miller – a forcible entry and detainer suit, in Illinois legal lingo. The complaint in that suit alleged that Miller had been Frances's caretaker but that she was no longer under his care and did not reside at the home; there was no lease; and Miller would not leave the home. Court records reflect that the lawsuit was "stricken from the call" (i.e., dismissed) on May 5, 2009.

Miller alleges that the Lawrences then contacted the Chicago police department

and asked them to remove him from the home, alleging that he was trespassing. Miller alleges that on May 16, 2009, the three police officer defendants arrested him or caused him to be arrested for criminal trespass to a residence. The criminal charge was dismissed on December 28, 2009 based on a motion by the prosecutor to *nolle prosequi* the case. Miller also alleges that since that time, the Lawrences have denied him access to his personal property that was at Frances's home.

## Discussion

Summary judgment is proper when "the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690–91 (7th Cir. 2010). A genuine issue of material fact exists if there is sufficient evidence to allow a reasonable jury to find in favor of the non-movant. *Swearingen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 859 (7th Cir. 2010). When considering a motion for summary judgment, a court does not weigh evidence or determine the credibility of any properly considered testimony. *Berry,* 618 F.3d at 691.

**1.    Section 1983 claim (Count 1)**

Washington, Andrade, and Magliano contend that the evidence establishes that there was probable cause to arrest Miller. As just noted, the Court views the evidence in light most favorable to Miller, the non-moving party, and draws reasonable inferences in his favor.

Frances permitted Miller to live in her home but did not require him to pay rent. He stayed there in exchange for the care and service that he provided to her. Frances gave Miller a written power of attorney in July 2008. In February 2009, Frances was

admitted to a hospital for cancer treatment. She was later transferred to an extended care facility. Frances wanted to return home. Defendants contend that Miller would not agree to this, but he denies this.

On March 10, 2009, a document was created that purported to revoke Miller's power of attorney. *See* Officers' Ex. H. The document states that "[b]ecause of my physical disability (gout in both hands), I have requested that my son, Stanley Lawrence, sign this Revocation on my behalf and at my request." Stanley signed Frances' name and his own to it, on and under a signature line reading "Frances Lawrence by Stanley Lawrence." There is an "X" that purports to be Frances' signature. The document is also signed by two witnesses and by a notary who affirmed that Frances "appeared before me in person and acknowledged that she requested that Stanley Lawrence sign and deliver the instrument on her behalf . . . ." *Id.* On the same date, a new power of attorney form was created in which Frances gave power of attorney to Shari, with Stanley as successor. This document, too, was signed by Stanley in Frances' name, and an "X" appears next to that signature. The document was notarized and witnessed in essentially the same manner as the revocation document.

Miller testified that at some point, Stanley told him that his power of attorney had been revoked. *See* Miller Dep. 39, 48 & 50. Stanley says that this took place within two or three days after March 10, *see* Stanley Lawrence Dep. 37, and Miller does not argue otherwise, though he disputes the validity of the revocation and says that Stanley and Shari exerted undue influence on Frances. Shari testified that she did not speak to Miller about the power of attorney revocation. Shari Lawrence Dep. 66-67. Miller says

4

that he was never given any of the documentation regarding the power of attorney revocation. *See* Miller Affid. ¶ 4.

On April 2, 2009, the "Frances Lawrence Trust" was established, with Shari and Stanley as trustees. *See* Officers Ex. J. The document was signed in Frances' name by Stanley, with an "X" in handwriting appearing next to that signature. The document was notarized with a verification similar to the one used on the documents dated March 10, 2009. On the same date the trust was established, a quitclaim deed for Frances' home was executed conveying the home to "Sheri [sic] E. Lawrence and Stanley E. Lawrence," as trustees of the trust. This document was likewise signed in Frances' name by Stanley, with an "X" next to the signature and a notarization similar to those previously described. *Id.*

In early April 2009, Miller used his power of attorney to obtain Frances' pension check from the Chicago Teachers' Union, open a bank account in her name, and deposit the check. He wrote checks on the account on Frances' behalf and cashed one check for $250. The defendants characterize this activity as theft and/or deceptive practices, but Miller says that his power of attorney authorized him to do all of this (on its face, it did), and he had been provided no evidence other than Stanley's say-so, which he did not credit, that his power of attorney had been revoked.

It appears that Stanley either posted the five day notice on the door of the home or left it on the porch on April 15, 2009. Miller admits that he saw it and that he knew what a five day notice was.

On April 21, 2009, Shari made a complaint to the Chicago police that Miller had stolen money belonging to Frances. It does not appear that Shari's complaint was

made any of the officers named as defendants in the present case. Shari told the police that Miller previously had a power of attorney but that it had ended on March 10 and that Shari now had power of attorney. Shari also reported that Stanley had posted a five day notice at Frances' home directing Miller to vacate the home and that Frances was now residing with Shari. It does not appear that the investigating officers took any action on this complaint.

On May 4, 2009, Shari made a report to the Evergreen Park police, alleging that Miller had committed a theft by withdrawing money from Frances' account via an ATM located in Evergreen Park. *See* Miller Ex. E. Shari told the Evergreen Park police that Miller had been Frances' caretaker but that his power of attorney had been revoked on March 10. She also reported that after that date, Miller had obtained Frances' pension check, opened an account in her name at a bank in Evergreen Park, and then withdrew funds from the account. Shari stated that she wanted to sign a complaint for theft, but it does not appear that any such complaint was filed. Shari also reported to the Evergreen Park police that Miller was still living in Frances' home and that Shari was "going to court tomorrow to get him evicted." *Id.* As indicated earlier, however, the eviction case was dismissed on May 5, the day after Shari's report to the Evergreen Park police.

Stanley went to the Chicago police department's Sixth District station on May 16, 2009 and spoke with Magliano, a police captain. Magliano has testified that he has no memory of the meeting. Miller has admitted, however, the accuracy of a paragraph of the officers' Local Rule 56.1 statement in which they stated that Stanley provided Magliano with the documentation revoking Miller's power of attorney and giving Shari

6

power of attorney; a copy of Frances' pension check showing that Miller had negotiated it; documentation showing that the account that Miller had opened for Frances had been emptied of the funds deposited and that Miller had cashed a check for $250; a copy of the earlier deceptive practices report prepared by the Chicago police; a contact card from the Evergreen Park investigating officer; a copy of the quitclaim deed for Frances' home along with the trust documentation; and documentation concerning the civil eviction case. See Pl.'s Resp. to Officers' LR 56.1 Stat. ¶ 28.[1]

A misdemeanor criminal complaint charging Miller with trespass to property was sworn out on May 16, 2009. See Stanley Lawrence Ex. X. Stanley denies signing it, but he is identified as the complainant, and the complaint bears a signature reading "Stanley Lawrence." The complaint alleges that Miller "committed the offense of criminal trespass to residence in that he[,] without authority, knowingly remained within a residence located at 8124 S Wabash after receiving a five day notice to leave the premises." Id. There was no criminal charge regarding the alleged theft or deceptive practices.

Miller was arrested on the criminal trespass charge on May 16, at Frances' home. Andrade and Washington were the arresting officers, and there is evidence that Magliano was also present and participated. Miller was released from custody later the same day. As indicated earlier, the criminal trespass charge was dismissed in December 2009. No criminal charges were ever filed on the allegations of theft or deceptive practices, though the existence of an ongoing investigation regarding "other felony offenses" was referenced in the arrest report prepared by Andrade and

---

[1] The Court overrules Miller's objection to this paragraph of the officers' LR 56.1 statement, which relies on the part of LR 56.1 that requires "short paragraphs." The particular paragraph was no longer than necessary to describe the several documents that Stanley gave to Magliano.

Washington regarding the trespass charge.  *See* Pl.'s Ex. J.

The officers argue that there was probable cause to arrest Miller for trespass, theft, and/or deceptive practices.  Probable cause to arrest exists if, at the time of the arrest, the facts and circumstances within the officer's knowledge would warrant a prudent person to believe that the arrestee had committed, was committing, or was about to commit an offense.  *E.g., Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012).

A reasonable jury could find that probable cause was lacking to arrest Miller for criminal trespass.  Probable cause to seize a person exists "only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard."  *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013).  The Illinois criminal trespass statute provides, in relevant part, that "[a] person commits criminal trespass to a residence when, without authority, he or she knowingly enters or remains within any residence . . . ."  720 ILCS 5/19-4(a)(1).  Though that statute might superficially be read as applying to the dispute between the Lawrences and Miller, it has long been established law in Illinois that the criminal trespass statute may not be used to settle a dispute over the right of possession of land.  *See People v. Evans*, 163 Ill. App. 3d 561, 564-65, 516 N.E.2d 817, 819-20 (1987) ("[T]he State should not have prosecuted defendant under the criminal trespass law.  The complainant, rather, should have sought to evict defendant through a forcible entry and detainer action. . . .  The complainant should not have used the criminal justice system to evict defendant."); *People v. Miller*, 344 Ill. App. 574, 581-82, 101 N.E.2d 874, 877 (1951) ("A penal statute relating to criminal trespass cannot be invoked to try disputed rights of title. . . .  [I]t is

8

well settled law in many states that it is an abuse of the penal statute relating to criminal trespass to use it to try disputed rights in real property."). This principle, so firmly established in Illinois law, is likewise part of the "governing legal standard."

The officers also contend, however, that there was probable cause to arrest Miller for deceptive practices and/or theft. Miller attempts to wave these arguments away on the ground that he was arrested only for criminal trespass and was never charged with the other offenses. The Supreme Court and Seventh Circuit have made it clear, however, that for purposes of a false arrest claim under section 1983, "[t]he existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim." *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)). Along the same lines, an officer's subjective reason for making an arrest is immaterial so long as a reasonable officer would have had probable cause to arrest the plaintiff for some offense. *Brooks v. City of Aurora*, 653 F.3d 478, 485 (7th Cir. 2011) (citing *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007)).

By placing exclusive reliance on the fact that he was not charged with theft or deceptive practices – an immaterial point, given *Devenpeck* and its progeny – Miller has essentially bypassed the opportunity to challenge the officers' contention that probable cause existed to arrest him for theft and/or deceptive practices. No matter. The evidence in that regard, though perhaps not convincing enough to convict Miller in criminal court, was sufficient to provide probable cause. No reasonable jury could find otherwise. It is undisputed that Stanley presented Magliano with evidence that Frances

9

had revoked Miller's power of attorney and that he nonetheless negotiated a large check that was payable to her and then spent the proceeds, at least some of it for his own benefit. Miller might have had a defense of lack of intent had he been charged with theft or deceptive practices, but the officers were entitled to rely on Stanley's report. *See, e.g., Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007); *Pasiewicz v. Lake Cty. Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). There was nothing known or reasonably available to Magliano at the time that would have suggested that Stanley's report lacked credibility. And as the officers argue, Magliano's knowledge of the facts giving rise to probable cause is imputed to Andrade and Washington, with whom Magliano was in communication. *See, e.g., Reher v. Vivo*, 656 F.3d 772, 777 (7th Cir. 2011).

For this reason, Magliano, Andrade, and Washington are entitled to summary judgment on Miller's section 1983 claim, and the Court need not address their other arguments in support of summary judgment.

**2.     False imprisonment claim (Count 2)**

Miller's first claim against Stanley is a claim of false imprisonment. "False imprisonment is the unreasonable restraint of a person's liberty, against his will, caused or procured by the defendant." *Poris v. Lake Holiday Property Owners Ass'n*, ___ Ill. 2d ___, 983 N.E.2d 993, 2013 IL 113907, at *13 (2013). The plaintiff must prove that the arrest or other restraint of his liberty took place without reasonable grounds to believe that he had committed an offense. *Id.*

Stanley argues that he did not intend for Miller to be arrested and that he did not cause the police to arrest Miller. The evidence, however, includes a criminal complaint

10

against Miller for trespass that identifies Stanley as the complainant and bears a signature. *See* Stanley Lawrence Ex. X. In addition, Stanley admits that he went to the police and accused Miller of staying at Frances' home without authority after receiving a five day notice to vacate – which is exactly what the criminal complaint alleges. Finally, Stanley attended several of the court proceedings on the criminal trespass case. Stanley denies that the signature on the complaint is his, but given the other evidence just summarized, a reasonable jury could find that he caused Miller to be arrested. As for the issue of intent, it is a basic principle of Illinois tort law that a person is considered to intend the natural and probable consequences of his actions. *See, e.g., Skinner v. Baker*, 67 Ill. App. 3d 773, 783, 384 N.E.2d 1360, 1367 (1978). A reasonable jury could find, without much difficulty, that an arrest is a natural and probable consequence of reporting to the police that a person is committing an ongoing crime.

On the issue of probable cause, defendants cite no Illinois authority applying the *Devenpeck* principle or its equivalent, so the Court's analysis is limited to whether there was probable cause to charge Miller with trespass, the only charge on which he was actually arrested. The Court need not repeat the earlier discussion. A reasonable jury could find that probable cause to charge Miller with criminal trespass was lacking. Stanley is not entitled to summary judgment on this claim.

### 3. Malicious prosecution (Count 3)

Miller also asserts a claim against Stanley for malicious prosecution. This requires him to prove that Stanley caused the commencement or continuation of an original criminal or civil judicial proceeding against him; the proceeding was terminated in his favor; probable cause for the proceeding was lacking; Stanley acted with malice,

11

and Miller was damaged as a result. *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) (internal quotation marks and citation omitted). Miller's claim is based on the institution of the criminal trespass charge.

Stanley argues that there is no evidence that he caused the criminal prosecution. This argument fails for the reasons discussed in the previous section; a reasonable jury could find that Stanley swore out the criminal complaint for trespass against Miller and thus caused the commencement of the proceeding.

Stanley also contends that Miller cannot satisfy the favorable termination requirement. A dismissal by way of a *nolle prosequi* is not considered a favorable termination if it was done for reasons not indicative of the innocence of the accused. *See Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 576 (7th Cir. 2009) (citing *Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1243). Miller has offered evidence from which a reasonable jury could make the requisite finding of favorable termination. Specifically, in mid-November 2009, Miller filed a motion to dismiss the criminal charge, alleging that Illinois law does not permit the use of a criminal statute to settle a dispute over the right to possession of property and that a person living in a residence with the owner's permission cannot be guilty of trespass. The prosecutor *nolle prossed* the case around the time this motion was to be heard by the judge presiding over the case. A reasonable jury could find that the dismissal took place due to the prosecution's perceived inability to prove the charge of trespass.

Next, Stanley contends that Miller cannot establish the absence of probable cause for criminal trespass. The Court rejects this argument for the reasons previously discussed. Illinois law is clear that in the malicious prosecution context, the test for

12

probable cause is proceeding-specific. See *Ritchey v. Maksin*, 71 Ill. 2d 470, 475, 376 N.E.2d 991, 993 (1978). Thus a plaintiff may maintain a malicious prosecution action with respect to a criminal charge for which there was no probable cause, even if there might have been probable cause as to some other charge. See *Kozel v. Village of Dolton*, 804 F. Supp. 2d 740, 746 (N.D. Ill. 2011).

Finally, the Court rejects Stanley's argument that no reasonable jury could find that he acted with malice. "[A] plaintiff may demonstrate malice by showing that the [defendant] proceeded with the prosecution for the purpose of injuring plaintiff or for some other improper motive." *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 97, 887 N.E.2d 656, 665 (2008). "Although a lack of probable cause does not itself establish malice, the trier of fact may infer malice from lack of probable cause if there is no credible evidence which refutes that inference." *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 648, 748 N.E.2d 258, 270 (2002). Because there is evidence from which a jury could find probable cause for a criminal trespass charge lacking, and because the evidence regarding Stanley's motive is hotly contested, summary judgment is inappropriate.

**4.      Intentional infliction of emotional distress (Count 4)**

To sustain a claim of intentional infliction of emotional distress (IIED), a plaintiff must prove that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that [his] conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 745, 742 N.E.2d 858, 866 (2000). "[M]ere insults, indignities, threats,

13

annoyances, petty oppressions, or other trivialities [do not] qualify as outrageous conduct." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 270, 798 N.E.2d 75, 80 (2003) (internal quotation marks omitted). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Id.* at 270, 798 N.E.2d at 80–81.

The Lawrences argue that Miller cannot satisfy the requirement of severe emotional distress. Shari argues that Miller "clearly and unequivocally admitted that he has not suffered any physical or psychological or emotional injury." Shari Lawrence Mem. at 9. Miller testified, however, that he suffered emotional pain and suffering, and he has submitted an affidavit in which he provides greater detail. *See* Miller Affid. ¶¶ 11-13 & 16. The Lawrences cite no case suggesting that the law requires some form of permanent or medically demonstrable injury in order to make out an IIED claim. Shari makes the related argument is that "there is no objective evidence" to support Miller's testimony that he has experienced emotional pain and suffering. *See id*. The law is clear, however, that the fact that Miller did not seek psychiatric or medical treatment is not a bar to his claim. *See Bristow v. Drake Street, Inc.*, 41 F.3d 345, 350 (7th Cir. 1994); *Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001). Miller's contention is that he was charged criminally, arrested, handcuffed, taken to a police station where he was held simply for living in the home where he had lived for sixteen years, for no good reason. A reasonable jury could find that this experience went beyond the categories of "insults, indignities, … annoyances, [and] petty oppressions." The adequacy of Miller's evidence of emotional distress involves disputed factual issues that must be decided by the jury, not issues that the Court can decide as a matter of law.

Stanley argues that there is no evidence that he intended for Miller to suffer emotional distress. This argument fails for the reasons discussed in connection with the claim of false imprisonment: a tortfeasor is presumed to intend the natural and probable consequences of his actions. *See supra* at 11.

Stanley also argues that his alleged conduct does not meet the requisite level of outrageousness. The Court disagrees. As Miller argues in response to Stanley's motion, there is evidence from which a jury reasonably could find that Frances had promised Miller, who is disabled, that he would always be able to stay in her home and that he dutifully cared for her for a number of years, only to find himself not just thrown out onto the street but also falsely arrested and charged criminally by relatives who, he contends, were trying to garner control over Frances' assets. The Court does not intend by this to credit Miller's version of the events or discredit the Lawrence's version. The point is that a reasonable jury could find such conduct to qualify as extreme and outrageous.

Finally, Shari argues that Miller has failed to show her involvement in the wrongful activity alleged to have constituted IIED. The Court agrees. Miller has conceded that he has no evidence that Shari had anything to do with instituting the criminal trespass charge[2] or having him arrested. Shari appears to have attended court proceedings in Miller's criminal case, but without more that is not enough to show her involvement in bringing about the charge in the first place. And it is the institution of the criminal charge and the arrest that forms the core of the IIED claim as alleged in Miller's

---

[2] As discussed earlier, the evidence reflects that earlier in April 2009, Shari complained to the police that Miller had stolen Frances' pension check and converted her property. The reports, however, did not result in any charges against Miller, and these reports are not part of the basis for his IIED claim.

15

fifth amended complaint:

> 43. Defendants Stanley Lawrence and Shari Lawrence, by instituting criminal charges against the Plaintiff, by falsely having him arrested and thrown out of his lawful residence and without the rights and benefits allowed to him by law in the eviction courts, and by otherwise abusing and defaming Plaintiff, engaged in extreme and outrageous conduct.

5th Am. Compl. ¶ 43. Shari was involved in the filed-and-then-dismissed forcible entry and detainer suit against Miller, but that is not the basis of the IIED claim. To the contrary, Miller's claim concerns the *bypassing* of the civil court system, not the filing of a case in civil court. Shari is entitled to summary judgment.

**5. Wrongful eviction (Count 5)**

Shari is entitled to summary judgment on Miller's wrongful eviction claim for the same reasons just discussed in connection with the IIED claim. Specifically, Miller has offered no evidence from which a reasonable jury could find that Shari participated in or caused Miller's allegedly wrongful eviction from Frances' home. In response to Shari's argument about lack of involvement, Miller cites evidence that she was a co-plaintiff in the civil eviction suit and that she told an Evergreen Park police officer that she was going to court to get Miller evicted. *See* Pl. Resp. to Shari Lawrence Mot. for Summ. J. at 8. Pursuing the court case, however, is not the basis of the wrongful eviction claim. Rather, Miller's complaint is based on the alleged bypassing of the civil courts and the use of the criminal law to evict him. Shari is therefore entitled to summary judgment on this claim as well.

The Court rejects Stanley's request for summary judgment on this claim. A landlord's invasion of a tenant's right to possession is an actionable common law trespass. *See Gronek v. Neuman*, 52 Ill. App. 2d 250, 253, 201 N.E.2d 617, 618

(1964). Second, and similarly, a wrongful eviction is an actionable common law tort under Illinois law. *See, e.g., Burnex Oil Co. v. Floyd*, 4 Ill. App. 3d 627, 630, 281 N.E.2d 705, 707 (1971); *see also, e.g., Cochrane v. Tuttle*, 75 Ill. 361 (1874); *Leiter v. Day*, 35 Ill. App. 248, 251 (1889). Thus even if defendants are correct that that the Illinois Forcible Entry and Detainer Act does not give rise to a statutory cause of action for damages, that is of no consequence.

**6.      Supplemental jurisdiction**

The Court has disposed of Count 1, the only federal claim in this case. The only claims that remain for trial are Miller's state law claims against Stanley Lawrence. The Court will, however, retain jurisdiction over those claims and proceed to trial. A significant amount of time and effort have been spent in federal court on these claims, including extensive discovery and motion practice and multiple settlement conferences. Were the Court to dismiss the state law claims, there is a good chance that a lot of this work would have to be redone in state court. In addition, relinquishing jurisdiction likely would result in appeals in parallel jurisdictions on the same claims, because Miller would be entitled to appeal in federal court the grant of summary judgment on his claims against Shari, but any appeal regarding his overlapping claims against Stanley would proceed in state court. This would make no sense. The case will therefore proceed to trial in this court as scheduled.

**Conclusion**

For the reasons stated above, the Court grants the motion for summary judgment filed by defendants Washington, Andrade, and Magliano [docket no. 154] and the motion for summary judgment filed by defendant Shari Lawrence [# 150] but denies the

motion for summary judgment filed by defendant Stanley Lawrence [# 166]. The final pretrial order remains due on April 15, 2013 as previously ordered, and the final pretrial conference and trial dates remain as-is. The ruling date of April 2, 2013 at 9:30 a.m. is converted to a status hearing. Counsel for plaintiff and defendant Stanley Lawrence are to appear; counsel for the dismissed defendants are not required to appear but may appear if they wish to do so.

                                                    MATTHEW F. KENNELLY
                                                    United States District Judge

Date: March 30, 2013